## THE BRITISH & AMERICAN MORTGAGE CO. V. TIBBALLS ET AL.

1. **Banks:** AS COLLECTING AGENTS: MAY RECEIVE THEIR OWN CERTIFICATES OF DEPOSIT AS MONEY. While it is a well established rule that an agent having a money demand for collection is authorized to receive nothing but money in payment, unless specially authorized by his principal so to do, yet, where the agent is a bank of deposit, it may receive its own certificates of deposit as money, and its principal will be bound by such payment, and the debtor discharged thereby, even though the bank soon afterwards becomes insolvent and never remits to its principal. Whether the result would be different in case the debtor knew at the time that the bank was insolvent, is not decided. But especially is the principal bound by such payment where the agent bank, as in this case, was also a bank of exchange, and the principal had directed it to remit by draft on New York; for in such case it must be presumed that the principal expected that the draft of its agent would be sent; and its failure to send the draft was the failure of its own agent, and the debtor should not suffer for its default.

2. ———: CUSTOMS OF: PRESUMED TO BE KNOWN BY MEN OF BUSINESS: JUDICIAL NOTICE OF. The system by which nearly all banks in this country transact monetary affairs by the use of checks, drafts and certificates of deposit must be presumed to be known by men of business, and especially by a company whose sole occupation is loaning money; and the courts take judicial notice of such customs, and they will not permit one who must be presumed to be familiar with them to profit by pleading ignorance thereof.

REED, J., *dissenting.*

### *Appeal from Monroe District Court.*

### FRIDAY, APRIL 25.

THIS is an action to recover a balance of money alleged to be due upon a promissory note, and to foreclose a mortgage upon certain real estate to recover the same. The defendants claim that the note has been fully paid. There was a trial by the court, and a decree for the defendants. Plaintiff appeals.

*Mitchell & Dudley,* for appellant.

*Henry L. Dashiell,* for appellees.

ROTHROCK, CH. J.—There is no real controversy as to the facts of the case, which, so far as material to the question involved, are as follows:

The plaintiff, as indicated by its name, is engaged in the business of loaning money on mortgage security. On the first day of September, 1877, it made a loan of $1,200, for five years, to the defendants, Rosella B. and Henry W. Tibballs, for which they executed their promissory note, and semi-annual interest coupons at the rate of eight per cent per annum. To secure the note, they executed a mortgage upon a farm in Monroe county. Afterwards the defendant, Massey, purchased the farm, and assumed the payment of the debt secured by the mortgage. The interest-coupons were paid as they became due. In September, 1882, the plaintiff, having its place of business in the city of New York, sent the note and the last coupon by mail to the Monroe County Bank for collection. A formal release of the mortgage was also deposited with the bank, to be delivered to Massey upon payment of the debt.

The note and mortgage were presented to Massey for payment by the cashier of the bank on the 29th of September. On the 2d day of October, Massey appeared at the bank to make payment. He was accompanied by one Roules, who was indebted to him in the sum of $400. Massey had a certificate of deposit of $200 on the First National Bank in the same town, which had been assigned to him by his daughter. He went to that bank and drew the money on the certificate, and Massey, Roules and the cashier of the Monroe County Bank went into a small room in the bank, and Roules paid Massey $400, which was handed to the cashier. Then Massey delivered to the cashier a demand certificate of deposit upon the bank for $390, which represented money that he had, about a month before that time, deposited with the bank to pay on the mortgage. He also delivered to the cashier three other demand certificates of deposit upon the bank, which had been transferred to him by his son, amounting in the aggre-

gate to $150. The balance of the debt, which amounted in all to $1,248, was paid to the cashier in currency, and the note, coupon, and the release of the mortgage were delivered by the cashier to Massey.

The bank made no remittance of any of the proceeds of the claim to the plaintiff, and it suspended payment on the 7th day of October, and on the 11th day of the same month it made an assignment for the benefit of its creditors. The plaintiff was not advised that Massey had paid part of the debt by the surrender of the certificates of deposit until after the bank had suspended payment, when it at once repudiated the transaction, and brought this action to recover, upon the ground that the debt is unpaid to that extent; and the question to be determined is, whether the surrender of the certificates of deposit should be held to be payment.

Counsel for the plaintiff base their right to recover mainly upon the well established rule, that an agent having a money demand for collection cannot discharge the obligation by receiving anything but money, unless specially authorized by his principal so to do; and it is contended that the certificates of deposit were not money, and that they are no more than obligations of the bank to pay the amount of money which they represented to the holder on presentation.

It appears in the evidence that, on the day in which the transaction occurred, the bank was paying in cash all certificates of deposit presented to it. Roules, who paid the $400 to Massey, drew it from the bank on that day upon certificates of deposit, and the bank had on that day over $8,000 cash on hand with which to transact its current business, and at the time of and after the transaction, Massey saw displayed upon its cash table from four to eight hundred dollars. There can be no doubt that if Massey had presented his certificates he would have been paid. If he had done this, and immediately returned the money to the cashier, it is conceded that this would have been payment. It was shown in evidence that it was customary for the Monroe County Bank, and, indeed, for

all other banks, to receive their certificates of deposit in payment of claims in the hands of the bank for collection. But it is not shown by the evidence that the plaintiff had notice of such custom. We do not think it necessary either to prove the custom or bring notice of it home to plaintiff. Courts take judicial notice of the general customs and usages of merchants, and of whatever ought to be generally known within the limits of their jurisdiction, such as matters of public history affecting the whole people; (1 Greenleaf on Evidence, § § 4, 5, 6;) and we think that the system by which nearly all the banks in this country transact monetary affairs by the use of checks, drafts and certificates of deposit, and without the actual handling of bank notes or coin, is so well known and understood, that no business man, much less a company whose sole occupation is loaning money, should be allowed to profit by pleading ignorance of it. The plaintiff, in effect, claimed that Massey should have presented his certificates of deposit at the bank counter, and had the money counted out to him, and then counted it back to the cashier. The law does not require any such vain and unnecessary formality in the transaction of business. According to the argument of the plaintiff, Massey should either have done this, or have seen to it that the bank made the proper application of the certificate of deposit to the payment of the debt. This would have been unavailing. Suppose that in such case a person doing business with a bank should insist upon seeing that the proper application was made. He would be advised, and properly too, that he had his release from the mortgage and receipt for the debt, and that the bank would attend to its own business without his interference.

It is claimed by the plaintiff's counsel that the bank was not authorized to receive anything but money in the discharge of the debt. When the interest coupon was transmitted to the bank, it was accompanied with a letter from the plaintiff to the bank, in which it was stated that, although the same was payable in gold coin, yet the bank might receive currency

in payment. And the letter accompanying the note directed that the note, mortgage, and release should be delivered "in exchange for a New York draft, free of exchange, for the $1,248 represented by the bond and the coupon." Now, if Massey had procured a draft on New York from some other bank, and delivered it to the Monroe County Bank, and the bank had delivered him the note, coupon and release of the mortgage, this would have been payment which the bank was authorized to receive, and yet it would not have been payment in money as defined by plaintiff's counsel. This direction of the plaintiff shows very plainly that it was not expected that Massey should collect together bank notes or coin, and present himself at the counter of the bank and count it down in payment.

It is claimed that the bank was insolvent on the day of the transaction, and counsel claim that the certificates were not worth ten cents on the dollar at that time. If it were shown that Massey knew this at the time of the transaction, there might be ground for the claim that he ought not to have entrusted the bank with making the application of the certificates of deposit. But the evidence does not show that Massey knew that the bank was then insolvent. On the other hand, the court was fully warranted in finding from the evidence (which we need not set out) that Massey supposed, and had reason to believe, that the bank was solvent and responsible. He knew that the plaintiff had intrusted its collections in Monroe county to the bank, and he had paid the previous interest coupons to the bank, and most of them in certificates of deposit.

As a further, final and, to our minds, more cogent reason why, under the facts of this case, the loss should not fall upon Massey, we may say that the Monroe County Bank was a bank of discount, exchange and deposit, and the plaintiff directed that the proceeds of the mortgage should be transmitted by draft on New York, and it would be an insult to the business intelligence of plaintiff's officers that they intended

that the draft of some other bank should be procured and sent to the office of plaintiff in New York. The Monroe County Bank was its accredited collection agent, and it was expected that its draft should be sent, and because this was not done was not the fault of Massey.

AFFIRMED.

REED, J. *dissenting.*—My examination of this case has led me to a conclusion the opposite of that announced in the foregoing opinion. The question to be determined in the case, as stated in the majority opinion, is, whether the delivery by Massey of the certificates of deposit to the bank, and its acceptance of them, was a payment of the debt due plaintiff, to the amount of the certificates. The general rule is, without doubt, that one acting as collecting agent for another has no right to receive anything except money in payment, unless specially instructed so to do. *Graydon v. Patterson*, 13 Iowa, 256; *McCarver v. Nealey*, 1 G. Greene, 360; *Drain v. Doggett*, 41 Iowa, 682. There is no claim that the bank had any special instruction or authority that would warrant it in receiving anything but money in payment of the debt. Indeed, the letter of plaintiff transmitting the claim to it, as I think, when fairly construed, amounts to an express direction to receive money alone in payment. The letter by which the interest coupon was transmitted called the attention of the bank to the fact that some of the coupons transmitted at that time were payable in gold coin, but authorized it to receive currency in payment of the same; and in the letter of Sept. 7, transmitting the note and other papers, the bank was directed to deliver the papers in exchange for a New York draft, free of exchange, for the $1,248 represented by the note and coupon.

The certificates of deposit are simply the undertakings of the bank to pay the sums of money named to the persons named, or to their order, on the return of the certificates properly endorsed. They are the negotiable promissory notes of

the bank, but are not money. Defendants make no question but that the general rule is as stated above. Nor is it claimed that the transaction amounted to a payment, if the case is governed by this rule. But their claim is that, as it was the usage of the bank in making collections to receive its own certificates of deposit in payment, this usage is binding on plaintiff, and that it is presumed to have given its assent, when it placed the claim in the hands of the bank for collection, that the collection might be made in accordance with the usage. That there are many cases in which persons dealing with banks are bound by their usages as to the manner of doing business cannot be doubted. It is held in *Mills v. Bank*, 11 Wheat., 431, "that when a note is made payable or negotiable at a bank whose invariable usage is to demand payment and give notice on the fourth day of grace, the parties are bound by that usage, whether they have personal knowledge of it or not;" and in *Guelech v. Bank*, 56 Iowa, 434, it was held by this court that the usages of the business of banking raises an implied assent by the customer of a bank, who deposits with it paper for collection at a place other than the town or city where the receiving bank is located, that it should be sent to a correspondent, who would become his agent.

It will be observed, however, that the usages referred to in these cases relate to the manner merely of transacting business. The question involved in these cases was whether the banks had made themselves liable by the manner in which the business committed to them had been transacted. But the usage relied on in this case, if it has the effect claimed for it, goes much farther, and entirely changes the undertakings and obligations of the parties. The undertaking of the defendants in the contract is, that they will pay the sum of money named in the contract to plaintiff or to its use. This undertaking can be performed, according to its terms, only by the delivery of the sum named in money. The obligation to pay in money is as essentially a part of the contract as is the un-

dertaking to pay the amount named. But the usage of the bank to receive another commodity than money on collections has the effect, according to the claim of defendants, to make the delivery by them of that other commodity the equivalent of the payment of the money.

It seems to me impossible that the usage should have this effect. That parties may contract for the payment of debts in some other commodity than money is certainly true; but when the contract is for the payment of money, the right of the creditor to be paid in money cannot be defeated by any usage to which he does not give his assent. *Marine Bank of Chicago v. Chandler*, 27 Ills., 525.

It is said, however, that the money was in the bank, and that Massey could have obtained it by presenting the certificates at the counter and demanding payment, and that it would have been a useless formality for him to have done this, and to have delivered the money at once to the cashier in payment of the debt; and it is claimed that what was in fact done is the equivalent of this. The position assumes one very important fact, viz., that if demand had been made the bank would have paid the certificates. But let that fact be conceded, still the position is, as I think, not maintainable. As I have said, Massey's undertaking was to pay in money, and it could not be performed by delivering any other commodity. An application of the sum of money named to plaintiff's use was absolutely essential to the discharge of that obligation. If he had obtained the money and had passed it to the bank, to be applied in payment of the debt, this would have been such an application of it, and would have discharged the obligation. The mere delivery of the certificates to the bank was not a payment of the debt, for the reason, as I have said, that it was payable only in money. Neither did that act alone appropriate the money to plaintiff's use. Massey was not the owner of any portion of the money which the bank had in possession at the time of the transaction, and, as a consequence, he could not apply it to plaintiff's use. The

bank was his debtor, it is true, but that fact did not invest him with any title to or ownership of the money which it had in possession. That result could be effected only by a payment of the money to him, or some act which was equivalent to that, and no such act was done. He did not receive from the bank the money which it was owing him, and make an application of it himself to plaintiff's use, but left it for the bank to make such application of it. Its act in securing the certificates did not have the effect to apply the money to plaintiff's use. It amounted to no more than an undertaking by it that it would make such application. The actual appropriation of it to that use remained to be made. The agreement to make such application of the money, however, was an agreement between the bank and Massey. Plaintiff was no party to it. It related to the payment of the debt which the bank owed Massey, rather than the one which Massey owed the plaintiff. The agreement between him and the bank was that it would apply the amount which it was owing him in payment of the debt which he was owing plaintiff. It is manifest, as I think, that this agreement alone does not have the effect to discharge him from his liability to plaintiff, but that he would be discharged under it only on the happening of one of the following events: (1) An actual performance by the bank of its agreement with him; or (2) an agreement by plaintiff that the bank should be substituted in his stead as its debtor. But neither of these events has happened. In my opinion the judgment of the district court should be reversed.