## DANIEL *v.* ST. LOUIS NATIONAL BANK.

Opinion delivered December 2, 1899.

1. BILL OF EXCEPTIONS—PRESUMPTION.—It will be presumed that a bill of exceptions duly certified by the trial judge contains a true statement of the evidence which it purports to set out.   (Page 226.)

2. NEGOTIABLE INSTRUMENT—PAYMENT.—Where a bank sent a note to another bank for collection, and the latter, having funds of the maker on deposit sufficient to pay the note, and being instructed by the maker to pay it, charged the amount of the note to the maker, and credited it to the sender of the note in the regular course of business, it constituted a payment, though the latter bank failed the next day, and returned the note without indorsement or accounting for the collection.   (Page 227.)

Appeal from Fulton Circuit Court.

JNO. B. McCALEB, Judge.

*Charles A. Phillips*, for appellant.

The transfer of the note to the appellee bank by the President of the Mammoth Springs Bank was invalid, and hence the latter was still the legal owner of the paper.   14 Mass. 178; 18 W. Va. 212, 228; 1 Boone, Bankg. § 101; 7 Ala. 273; 1 Cook, Corp. 716; 4 Th. Corp. §§ 44–46; 62 Ark. 33; 34 S. W. 89.   Until it is shown that some officer or agent of the bank was duly authorized to make such transactions, the pre-

sumption is that it was the duty of the board of directors, and that the only duty of the president was to preside at the meetings. 22 Gratt. 51; 108 U. S. 198; 8 Wheat. 357; 37 N. Y. L. 98; 69 Fed. 131. Even if part of the $600 had been paid before the Mammoth Spring Bank had authority to receive same, such payment was a consideration, such as would have supported the subsequent receipt. Clark, Cont. 191, note 139. The appellee was not a purchaser of the note for value. 14 Am. St. Rep. 810; S. C. 71 Wis. 309; 37 N. W. 421. Payment to the agent with instructions to apply to principal's debt extinguishes same, regardless of what disposition the agent makes of the fund collected. 7 N. W. 457; 1 Dan. Neg. Inst. 643; Byles, Bills, 151.

*Sam H. Davidson*, for appellee:

The allegation of indorsement and of appellant's indebtedness to appellee thereby is a sufficient allegation of ownership. 2 Am. & Eng. Enc. Law, 315. This question of the sufficiency of the allegation on this point cannot be raised for the first time on appeal: 49 Ark. 277; 30 Ark. 25; 56 Ark. 263; 56 Ark. 444; Leath. Notes on Ark. Stat. § 1051; Sand. & H. Dig., § 257. The bank president had power to endorse the paper in the hands of the bank. 24 C. C. A. 597. The appellee was a *bona fide* holder, notwithstanding when the note was discounted the proceeds were only credited to the indorser. 21 S. W. 523. Payments made by the maker of a negotiable promissory note before its maturity are made at his risk. 18 Am. & Eng. Enc. Law, 198; 22 Ind. 232; 1 Morris (Ia.) 48. Payment to the payee or indorsee of a note, who has not possession of it, will not protect the maker against the claim of the *bona fide* holder thereof. 64 Ga. 544; 23 Kas. 428; 20 Pick. 545; 8 Tenn. 737; 18 Am. & Eng. Enc. Law, 190. Payment by check does not extinguish a claim unless accepted as payment thereof. 18 Am. & Eng. Enc. Law, 167[4]. The attempt to make the affidavits of bystanders part of the record must fail because the terms and requirements of the statute are not followed. 56 Ark. 600, 601; 57 Ark. 1. The failure of the owner to present the note at the bank where it is made payable does not absolve the maker, even though he had the funds to meet it on deposit there, and

they were lost through a subsequent failure of the bank.   44 N. J. Law, 638; 80 N. Y. 100; 18 Am. & Eng. Enc. Law, 199.

HUGHES, J.   The St. Louis National Bank sued Daniel, the appellant, upon the following note, to-wit:

"$1,000.   Mammoth Springs, Ark., April 28, 1897. Ninety days after date, I promise to pay to the order of the Bank of Mammoth Springs one thousand dollars, at the Bank of Mammoth Springs, Arkansas, for value received, with ten per cent. interest from maturity until paid.   F. M. Daniel.

Indorsements: "Bank of Mammoth Springs.   H. G. King, President.

"Received on the within note $400.00, this July 31, 1897. J. W. Meeks, attorney for R. G. Dun & Co."

And on the back of the note appears this indorsement: "Pay Bank of Mammoth Springs, or order.   St. Louis National Bank."

The appellant pleaded payment.   Judgment was rendered for appellee against appellant for four hundred dollars, and he appealed.

The appellee admitted that four hundred dollars had been paid to it on the 31st of July, the amount being credited on the note; but contends no other payment was ever made to it, or to any one for it, who was authorized to receive it.

The evidence on the part of appellant tends to show that on the 20th of July, 1897, the appellant sent through the mail to the Bank of Mammoth Springs for collection the note, the payment of which is in controversy, and that it was received by the Bank of Mammoth Springs about 11 o'clock on the morning of the 21st of July.   King, the casher of the Bank of Mammoth Springs, testified that "on or about July 21st Mr. Daniel came into the bank, and paid $600 on account of this note.   This amount was credited to the account of the St. Louis National Bank.   *   *   *   *   The $600 paid by Mr. Daniel was paid a few days before the maturity of the note.   *   *   *   I don't think I credited the note with this payment.   The note was in the collection case at the time.   He did not pay the note in full.   The note was in my hands for collection.   The custom of banks dealing with each other is,

when we make collections we credit them, and when we send collections they credit them to us. This $600 was paid and receipted as a credit to this note, and we gave a receipt to that effect. This $600 was paid in three different installments, $200 each. One was on the 21st, while this note was in our collection case for collection. They were all close together. The $600 was credited to the account of the St. Louis National Bank. This account would sometimes show a credit and sometimes a debit. The St. Louis Bank is holding considerable quantity of our securities, and I consider that any claim they have against the Bank of Mammoth Springs will be amply covered by these collaterals."

F. M. Daniel, the appellant, testified: "I am defendant in this suit. I executed this note to the Bank of Mammoth Springs. I had no notice of the St. Louis National Bank holding this note prior to the bank closing. This note was given to the Bank of Mammoth Springs, and payable there. I paid there $600 on this note, and got a receipt for it, which is as follows: 'July 21st, 1897. Received of F. M. Daniel $600, as part payment of his note of $1,000 payable to the Bank of Mammoth Spring, and due July 30, 1897. Bank of Mammoth Spring, by H. G. King, President.' I paid this $600 at different times; $200 on July 21st, and the remainder a short time before. I had money in the bank, and wrote checks on the bank, and told them to put it on this note, and the whole $600 was charged to me, I suppose. Mr. King told me that these checks were all charged up to me on July 21st. I had no notice of the sale of this note to the St. Louis National Bank until the day after the bank failed. When I asked Mr. Reed or some of them where my note was, they said that the St. Louis National Bank had it. I then asked about the $600 I had paid, and they said that was all right. I had no thought beforehand of the bank failing. I afterwards paid the remaining four hundred dollars to Mr. Meeks, and told him that I had paid the $600. The bank is closed, and I have not got my checks yet."

On the cross-examination of King, the cashier of the Bank of Mammoth Spring, he testified that he had the $600 paid him

by Daniel and the note for collection at the same time on the 21st. It is contended by the appellee that there was no such testimony, and that this is improperly in the record. But it appears regularly in the bill of exceptions certified by the judge, and no effort has been made to correct the record in this behalf, and we must take it as correct. We cannot go outside upon assertion merely to the contrary.

The evidence shows that the Bank of Mammoth Spring failed on the 22d of July, and that it returned the note to the St. Louis National Bank, without credit of this $600, and that the same was not paid to the St. Louis National Bank.

The defendant (appellant) asked the following instructions, to-wit:

"The court instructs the jury that if you find from the evidence that the Bank of Mammoth Spring, and the plaintiff, the St. Louis National Bank, were correspondents, and on the 21st of July, 1897, the defendant had in the hands of the Bank of Mammoth Spring six hundred dollars, with instructions for that amount to be paid on the note against him held by the plaintiff, and that you further find that at the same time the Bank of Mammoth Spring had received the defendant's note for collection, and that the Bank of Mammoth Spring, on the 21st of July, 1897, charged up the six hundred dollars to the defendant, and entered to the credit of the St. Louis National Bank, the plaintiff, the said six hundred dollars in their usual course of banking business as correspondents of said St. Louis National Bank, then you would be authorized to find for the defendant;" which was refused by the court, to which the defendant excepted.

A majority of the court is of the opinion that the court committed error in refusing to grant this instruction. Until the note was sent to the Bank of Mammoth Spring for collection, it was not the agent to receive payment for the St. Louis bank, but it was its agent for collection after the receipt of the note on the 21st of July, 1897, and if, after its receipt for collection by the Bank of Mammoth Spring on the said 21st of July, 1897, the Bank of Mammoth Spring had six hundred dollars of Daniel's money, which he had directed to be paid on this

note, and at the same time had the note on the 21st, and charged up to Daniel the amount, and credited the National Bank of St. Louis with said six hundred dollars in the usual course of business between the two banks as correspondents, we are of the opinion that this constituted payment by Daniel to the St. Louis National Bank.

We think there was testimony in the case which called for the submission of these questions to the jury.

For the error indicated, the judgment is reversed, and the cause is remanded for a new trial.

BUNN, C. J., (dissenting.) The judgment of the court below is reversed by the majority of this court, because that court erred in refusing to give the following instruction, to-wit:

"The court instructs the jury that if you find from the evidence that the Bank of Mammoth Springs, and the plaintiff, St. Louis National Bank, were correspondents, and that on the 21st of July, 1897, the defendant had in the hands of the Bank of Mammoth Springs six hundred dollars, with instructions for that amount to be paid on the note against him held by the plaintiff, and that you further find that at the same time the Bank of Mammoth Springs had received the defendant's note for collection, and that the Bank of Mammoth Springs, on the 21st day of July, 1897, charged up the six hundred dollars to the defendant, and entered up to the credit of the St. Louis National Bank, the plaintiff, the said six hundred dollars in their usual course of banking business as correspondents of said St. Louis National Bank, then you would be authorized to find for the defendant."

There are several things in this instruction which, if announced as rules of law, would lead to remarkable consequences. In the first place, it is announced that the fact of being a correspondent of the St. Louis National Bank would authorize a verdict for the defendant under the circumstances of this case; that is to say, such a fact would be sufficient to bind the plaintiff by the acts of the Mammoth Springs Bank as its agent to collect said note. It is manifest, I think, that all that could or should have been said by the court in an instruction on the subject was that if the jury should find that

the defendant paid at the Mammoth Springs Bank, and to that bank to be applied to the note in question, the said sum, or any part thereof, at the time or after the receipt by the Mammoth Springs Bank of the note in question, then they should find for the defendant to the extent of such payment. Even this would have been in a violation of a rule laid down by this court, to be referred to later on, and when, therefore, I say that such was all the court should have given by way of instruction on the subject, I don't mean that even that is strictly the law, but only that, the verdict of the jury and judgment of the court being based on that theory, it was all that the defendant could ask, since the jury, in giving its verdict for $400 only, evidently found that the last two hundred alleged to have been paid was in fact paid, after the reception of the note for collection by the Mammoth Spring Bank at 11 o'clock a. m. of the 21st July, and therefore was paid when said bank was in fact the agent of the plaintiff to collect the note, and for that reason should be deducted in favor of defendant from the $600 claimed by the plaintiff.

The $400 for which the judgment was given, according to defendant's testimony, was paid some days before the arrival of the note for collection—before the Mammoth Spring Bank became the agent of the plaintiff in any sense, unless we say, as the refused instruction seems to say, that a business correspondence constitutes the one the agent of the other correspondent.

These payments by the defendant, it appears, were not payments in money, but by checks on the Mammoth Springs Bank, in which the defendant had funds on deposit to his credit, for in his testimony he says: "Q. What was the amount of the payment on the 21st. A. I think it was $200, but am not positive. I differ from Mr. King (president of the Mammoth Springs Bank) as to the amount of the payments I made. He thought there was three $200 payments, but my recollection is that there were two $100 checks and two $200 checks. I had money in the bank, and wrote checks on the bank, and told them to put it on the note, and the whole $600 was charged to me, I suppose." So, then, no actual money was paid, but the defendant merely drew his

checks on this bank against funds he had in it, and directed the amounts so drawn to be credited on or to said note. This strange transaction is more or less explained by the further testimony of defendant that he still thought, when making these payments, that the note was owned by the Mammoth Springs Bank, the original payee, and never knew that it belonged to the plaintiff, or had been assigned to any one, until the Mammoth Springs Bank had closed its doors.

When the payments amounting to $400 were made, the Mammoth Springs Bank was the depository of the defendant— his agent. The question is, when did that agency cease? A receipt was given by the president of that bank to the defendant for these payments, as they were made, as follows: "July 21st, 1897, received of F. M. Daniel $600 as part payment of his note of $1,000, payable to the Bank of Mammoth Springs, and due July 30th, 1897." [Signed] "Bank of Mammoth Springs, by H. G. King, President." So, after all, the credits were not given to defendant on his note except that of 21st July—that is, as credits on the note or to be applied on the note—unless the bank book entries otherwise indicated, the exact language of which we have not. H. G. King, the president of the bank, and the person who seems to have dealt for the bank in the matter, says he did not enter this credit of $600 upon the note, because there was yet $400 due on it.

When the Mammoth Springs Bank received the note for collection, on the 21st July, it had this indorsement on it: "Pay Bank of Mammoth Springs or order." [Signed] "St. Louis National Bank." This constituted the authority of that bank to collect the note. King says further that on the morning of the 23d of July, "I returned it to the St. Louis National Bank." And it appears elsewhere that it then had no additional indorsements on it—of payment or otherwise. In other words, notwithstanding what was said as to the appropriation of payments, none of them were indorsed as credits on the note, and the plaintiff was not informed of them. It is, of course, not to be denied that the Mammoth Springs Bank is liable to the plaintiff for any money the former had actually collected for the latter. And neither can it be denied that the defendant is

entitled to credits on his note of amounts actually paid by defendant to it, whether directly made or through its duly authorized agent, but have such payments been made, and in a manner recognized by the rules of law regulating commercial transactions of the kind? The legal principles governing such cases appear harsh at first blush, and yet they are a necessity. The defendant never once thought, when making the alleged payments, to ask where the note was, or to whom it belonged at the time. He assumed that it was still the property of the local bank—the original payee. He paid the several amounts not in money, but by checks on this same bank, and against funds he then had therein. It is unnecessary to ask why he did not pay the $600 all at once. Nor need we advert to the fact that the bank was then in the throes of death, for its doors were closed on the morning of the 23d of July, 1897.

But enough as to the facts, except to say that the defendant, being a depositor in the bank to the extent at least of this $600 up to the afternoon of the 21st, would have lost the same by the failure of the bank within the two succeeding days, unless his deposits could be made to pay his debt to the plaintiff, as is sought to be done in the defense to this suit. Under the rule laid down in *Jenkins* v. *Shinn*, 55 Ark. 347, the Bank of Mammoth Springs was defendant's agent up to the afternoon of the 21st, in all things respecting the payments he had made to be appropriated to the payment of the note. How stands it afterwards? In *L. R. & Ft. S. Ry. Co.* v. *Wiggins*, 65 Ark. 385, we said: "An agent, having authority merely to accept payment at maturity of notes due his principal, has no implied authority to alter the contract by accepting payment of a note before its maturity." I quote from the syllabus.

Besides, the mere drawing of checks on the Mammoth Springs Bank was not payment to plaintiff, but a request to the Mammoth Springs Bank to pay this much on the note, for a third party cannot make the agent of his creditor the payee of his debts, and hold his creditor bound by such an arrangement. There was no money paid by defendant, nor check on solvent

bank given by him, for the plaintiff. *Henry* v. *Conley*, 48 Ark. 267.

The instruction asked and refused does not reflect the law of the case made, in my opinion, and was properly refused.

BATTLE, J., absent.