EMMA R. GRIFFITH v. MERCHANTS LIFE ASSOCIATION OF BURLINGTON, IOWA, Appellant.

Benefit insurance: PAYMENT OF ASSESSMENTS: LAPSE OF POLICY. An assessment association authorized a bank to receive assessments from its members, acknowledge receipt and remit the same, but directed it not to receive assessments past due unless specially authorized. The decedent was a depositor at the bank and paid his assessments there and at one time told the cashier to pay his assessments, if at any time he neglected it, and to charge the same to his account. *Held,* that the alleged agreement with the cashier did not amount to payment of an assessment of which the cashier had no notice, but by reason of its nonpayment the policy had lapsed.

**Same:** PLEADING: AMENDMENT AFTER TRIAL.   Where no issue as to the validity of an assessment was raised until after submission of the cause, that question could not be brought into the case by amendment without first setting the submission aside and giving the association an opportunity to be heard

*Appeal from Taylor District Court.*—HON. H. K. EVANS, Judge.

SATURDAY, FEBRUARY 20, 1909.

ACTION in equity to recover on an insurance policy. There was a judgment for the plaintiff, from which the defendant appeals.—*Reversed.*

*Haddock & Son* and *Seerley & Clark,* for appellant.

*W. M. Jackson,* for appellee.

SHERWIN, J.—The appellant is an assessment association, and in 1903 it issued a policy of $2,000 on the life of Sheridan D. Griffith.   All dues and assessments were regularly paid until April 30, 1907, at which time there became due on said policy an assessment or call that was made in March.   Whether this assessment was paid is the only question for determination.   The defendant had made the Citizens' Bank of Bedford, Iowa, its depositary, and had directed its certificate holders in that vicinity to pay their calls at said bank.   The authority under which the bank acted for the defendant, and its only authority to transact its business, was contained in a writing which appears in the record.   The authority therein conferred upon the bank, so far as collections were concerned, was contained in the following excerpts from the writing: "We furnish you with the necessary remittance blanks. Our members will present deposit slips.   Stamp the call 'paid' and mail the addressed postal card to us. . . .

Unless specially authorized, do not receive any money after the close of the month in which this call is payable. . . . Blank deposit tickets will be prepared by our solicitors for signature, for such cash as may be left with you on our account, and the business will be conducted in such a manner as to give you the least possible annoyance." The assessments under this policy were made quarterly, and were paid at the bank. Mr. Griffith paid the January, 1907, assessment, and at the time of making such payment he said to the cashier of the bank: "Now, my time was pretty near up for this last assessment. . . . Now, if I should ever forget to come in and pay my assessment, you pay it for me and charge the same to my account." To this statement and request Mr. Long, the cashier, answered: "All right." Mr. Griffith was a depositor in the bank in question, and the record shows that at the time of the January talk with the cashier, and at all times thereafter until his death on the 14th of May, 1907, he had a balance due him of more than enough to pay the April assessment. The call for this assessment was made in March and directed to Mr. Griffith. He did not pay it, nor was it paid by the bank, and there is no evidence tending to show that either the bank or Mr. Long, its cashier, had any knowledge of the call that had been sent to Mr. Griffith.

The appellee contends that Mr. Griffith directed the bank to pay his assessments out of the funds in its hands and charge the same to his account, and that, if they failed to do so, it was the negligence of the defendant's own agent and would not defeat her right to recover. We are of the opinion that the contention can not be sustained on any sound principle of law or equity. The authority given the cashier by Mr. Griffith was limited. He had no authority to pay an assessment from Mr. Griffith's funds unless it was necessary to do so to protect Mr. Griffith against his

1. BENEFIT INSURANCE: payment of assessments: lapse of policy.

own neglect.   In other words, Mr. Griffith authorized the cashier to pay only when it became apparent to him that Griffith had himself forgotten the assessment and that the policy would lapse unless it was paid by him.   The bank was not the general agent of the defendant as to any matter.   On the contrary, its power was limited.   It could accept payment of calls, stamp the calls paid, and mail the addressed postal card and remit at the end of the month. It was no part of the bank's employment to push collections for the defendant.   Nor was it employed to protect members of the defendant association against their own carelessness or neglect.   The assessment or call in question was sent directly to Mr. Griffith by the defendant.   It did not pass through the bank, nor did the bank or its cashier have express notice that such a call had been made, or that Mr. Griffith had neglected to pay it.   The only knowledge that the bank had was that Mr. Griffith was a member of the defendant association when he paid the assessment in January, and that a call had been made on other members thereof at the time in question.

It is said, however, that the bank should have had in mind Mr. Griffith's membership, and should have known that a call had probably been made upon him for the last assessment.   If the appellee's contention as to this be conceded, it still remains true that, as Mr. Griffith had the right to pay the call directly to the home office, the bank acting as the agent of the defendant was not bound to know that he had not so paid it or that it was unpaid when the time within which payment could have been made had expired. That the alleged agreement did not constitute a payment is clear.   It does not bring the case within the rule announced in the *British & American Mortgage Co. v. Tibballs,* 63 Iowa, 468, and *Griffin v. Erskine,* 131 Iowa, 444, relied upon by the appellee.

After the close of the trial, but on the same day, the plaintiff, without notice to or knowledge on the part of

the defendant, filed an amendment to the petition alleging that the deceased was not in arrears at the time of his death, and that all sums and assessments had been fully paid. This amendment states that it was made to conform the pleadings to the proof. No issue was theretofore made as to assessments. In her petition the plaintiff specifically alleged as follows: "Your orator further shows that, by the rules and regulations of the said defendant, certain small amounts of dues became due and owing from Sheridan D. Griffith on account of his membership which should have been paid on or before April 30, 1907." And the amount thereof was alleged to be $5.60. Moreover, it was stipulated on the trial that an "assessment was issued or call made for the month of April, 1907," and, further, "that said assessment or call has never been paid to the company, and at the present time remains unpaid." It is manifest that the amendment to the petition not only did not conform to the proof, but that it directly contradicted the original petition and the stipulation that had been made during the trial. The trial court held that the assessment had been paid and refused to consider the question raised by the amendment in question. It is now too late to urge the proposition that no legal assessment was shown. If the appellee concluded, after the submission in the lower court, that such an issue should have been made, steps should have been taken to set aside the submission, and the appellant should have been given an opportunity to meet the changed front.

2. SAME: pleading: amendment after trial.

For the reasons pointed out, the judgment must be *reversed.*