## POLLAK BROTHERS *v.* NIALL-HERIN CO.

Where a bank sends an accepted draft to a correspondent for collection, who receives in payment the check of the acceptor on itself in the regular course of business, the acceptor being a depositor with the collecting bank and having on deposit a sum in excess of the check, and the collecting bank surrenders the draft to the acceptor and remits its own check to the initial bank, which check is not paid because of the failure of the remitting bank, such transaction constitutes a payment of the draft as between the drawer and the acceptor, although the collecting bank may have been insolvent at the time, its insolvency not being known to its officials or the depositor.

OCTOBER 11, 1911.

Complaint. Before Judge Pendleton. Fulton superior court. October 14, 1910.

*Anderson, Felder, Rountree & Wilson,* for plaintiffs.

*Candler, Thomson & Hirsch,* for defendant.

EVANS, P. J. Pollak Brothers sold to the Niall-Herin Company, a corporation, a certain quantity of matting, and the action is on account to recover the purchase-price. The defendant admitted the purchase of the goods at the price stated, and pleaded payment. The case was tried before the judge without a jury, upon an agreed statement of facts, which may be condensed as follows: The plaintiffs drew a draft on the defendant for the purchase-price of the matting, payable, six months after sight, to the order of the

Hongkong & Shanghai Banking Corporation. The draft was duly accepted by the defendant on June 21, 1907, and on the day of its maturity, to wit, December 21, 1907, the draft was presented to the defendant by the Neal Bank, to the order of which bank the draft had been made payable by the indorsement of the Hongkong & Shanghai Banking Corporation. At the time of its presentation the defendant had on deposit with the Neal Bank a sum of money largely in excess of the amount of the draft. Upon the presentation of the draft the defendant gave to the Neal Bank its check on the Neal Bank and against its deposit account therein for the amount of the draft. This check was given in payment of the draft, and the draft was marked "Paid" and surrendered to the defendant. The Neal Bank was the collection agent of the Hongkong & Shanghai Banking Corporation, and immediately upon receiving the check upon itself given by the defendant it passed the amount of the check upon its books to the credit of the Hongkong & Shanghai Banking Corporation. On the same day when the Neal Bank received the defendant's check, it mailed to the Hongkong & Shanghai Banking Corporation, which was the agent of the plaintiffs, its check for $2,176.70, drawn on the Fourth National Bank of New York, less its collection charge of $2.17. Three days later the check was presented to the Fourth National Bank of New York, and payment thereof was refused; the Neal Bank having failed in the meantime, and a receiver having been appointed for it. At the time of the foregoing transaction the Neal Bank was insolvent, but this fact was unknown to the defendant or to the officers of the bank. The Hongkong & Shanghai Banking Corporation intervened in the receivership case, alleging that the defendant had paid the draft, and that the Neal Bank in collecting the draft was acting as its agent, and praying that the amount collected upon the draft by the Neal Bank be decreed to be a trust fund in the hands of the receiver, to be specially accounted for to the Hongkong & Shanghai Banking Corporation. Its intervention, in the light of the answer of the receiver and the admitted facts upon the hearing, was denied, upon the ground that the draft referred to was paid only by the check of the defendant against its own deposit in the Neal Bank, the collecting agent of the Hongkong & Shanghai Banking Corporation. Upon the foregoing facts the court rendered judgment for the defendant, and the plaintiffs excepted.

The plaintiffs contend that these facts are insufficient to constitute payment, because an agent to collect can only accept money in payment of his principal's debt. We recognize the general rule that an agent authorized merely to collect a demand or to receive payment of a debt cannot bind his principal by an arrangement short of an actual collection and receipt of the money. Ward *v.* Evans, 2 Ld. Raymond, 928. But we think the circumstances under which the draft was paid in this case are equivalent to the actual receipt of the money by the agent. Courts should deal with practical problems in a practical way, and give the same sense to a plain and ordinary business transaction which is uniformly attached to it by the business world. As remarked by Justice Field: "We cannot shut our eyes to matters of public notoriety and general cognizance. When we take our seat on the bench we are not struck with blindness and forbidden to know as judges what we see as men." Ho Ah Kow *v.* Nunan, Fed. Cas. No. 6,546. Our code declares that judicial notice will be taken of the general customs of merchants and similar matters of public knowledge. Civil Code (1910), § 5734. In British &c. Mortgage Co. *v.* Tibballs, 63 Iowa, 468 (19 N. W. 319), the Supreme Court of that State said that "the system by which nearly all the banks in this country transact monetary affairs by the use of checks, drafts, and certificates of deposit, and without the actual handling of bank notes or coin, is so well known and understood that no business man, much less a company whose sole occupation is loaning money, should be allowed to profit by pleading ignorance of it." We dare say that no depositor who paid a note or draft payable at his own bank ever went through the senseless ceremony of first taking out his money at one window and immediately paying it in at another window. He pays the note or demand which his bank holds against him with his check; and if he has the money to his credit, and the bank is a going concern, with money on hand sufficient to cash the check, the payment is equivalent, in law and in fact, to a payment in money. What sound reason can be advanced to require, as essential to the validity of the payment, the useless formality of the depositor taking his money from the bank officer and immediately restoring it to him. The draft was in the possession of the bank, which had a legal right to receive the money in payment, which was also in its custody, and when the

bank accepted its depositor's check in payment of the draft, canceling and delivering it to him, and entered the transaction on its books, thenceforward the draft was paid, and the bank held the money as the agent of the drawer. The bank's failure after the remittance of the collection by check, and the consequent inability of the drawer to realize on the check, did not and could not affect the past transaction. And it has accordingly been held, that where the drawer of an accepted draft deposits it with a bank, who sends it to its correspondent bank for collection, and the drawee delivers to the latter bank his check on it, having at the time on deposit a sum in excess of his check, receiving from the bank the accepted draft, and appropriate entries are made on the books of the collecting bank, which remits its own check to the initial bank, such a transaction constitutes a payment of the draft by the drawee to the drawer, notwithstanding the check remitted by the collecting bank is not paid because of its failure; neither the officers of the remitting bank nor the acceptor knowing of the bank's insolvency at the time.    Howard *v.* Walker, 92 Tenn. 452 (21 S. W. 897); British &c. Mortgage Co. *v.* Tibballs, 63 Iowa, 468 (19 N. W. 319); Daniel *v.* St. Louis National Bank, 67 Ark. 223 (54 S. W. 214); Welge *v.* Batty, 11 Ill. App. 461; Scott *v.* Gilkey, 153 Ill. 168 (39 N. E. 265); Nineteenth Ward Bank *v.* First National Bank, 184 Mass. 49 (67 N. E. 670); Morse on Banks (4th ed.), § 248; 2 Bolles on Modern Law of Banking, 557.

It is no reply to say that payment of the draft as between drawer and drawee cannot result unless the facts of the transaction impress a trust in favor of the drawer upon the assets of the collecting bank.    Other and additional elements are to be considered in determining the existence or enforceableness of the trust.    Some authorities are to the point, that, notwithstanding the transfer of the drawee's funds held on deposit by the collecting bank to the credit of the drawer, no trust can arise unless the bank converts the money represented by the check into a specific fund or other assets capable of identification.    People *v.* M. & M. Bank of Troy, 78 N. Y. 269 (34 Am. R. 532); Sherwood *v.* Milford Bank, 94 Mich. 78 (53 N. W. 923); Billingsly *v.* Pollock, 69 Miss. 759 (13 So. 828, 30 Am. St. R. 585); Anheuser-Busch Brewing Ass'n *v.* Clayton, 56 Fed. 759 (6 C. C. A. 108).

*Judgment affirmed. Beck, J., absent. The other Justices concur.*