Sanitary Can Company, Appellee, v. National Pickle & Canning Company, Appellant

PAYMENT: Payment of Draft With Worthless Check. A draft which, on its face, requires payment to be made in cash or its equivalent

only, and likewise limits the authority of the collecting bank to collecting and remitting to the drawer, is not paid by the act of the collecting bank in receiving the check of the drawee on the collecting bank for the full amount of the draft, and surrendering the latter, when such check, without any fault on the part of the maker, *turns out to be worthless.*

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

SEPTEMBER 28, 1921.

ACTION brought at law to recover a money judgment for $844.92 and interest on account for a car of cans. Defendant pleaded payment. The case was transferred to equity. The court found that there was due plaintiff from defendant $1,137.92, but that there should be credited thereon, as conceded and offered by plaintiff, the net sum of $502.73, which last-named amount was the dividend from proceedings in bankruptcy of D. H. Sage, or his estate, doing business as Sage Banking Company. This left a balance of $634.48, for which judgment was rendered. The defendant appeals.—*Affirmed.*

*W. B. Collins,* for appellant.

*Hollingsworth & Blood* and *L. J. Montgomery,* for appellee.

PRESTON, J.—The plaintiff, a manufacturer of cans in the east, shipped to the defendant a carload of cans at the agreed price of $844.92, and drew a sight draft on defendant dated October 1, 1914, for the amount thereof, with bill of lading attached, through the National Newark Banking Company, of Newark, New Jersey. The draft was payable to said bank, signed by plaintiff, and addressed to National Pickle & Canning Company, St. Louis, Missouri. Upon the face of the draft, in red ink, was printed the notation:

"This draft must be paid in cash or its equivalent, the bank named as payee acting only as agent to collect and remit to the drawer."

It also recites:

"Bill of sale attached, deliverable only on payment hereof."

It is indorsed:

"Pay to the order of any bank for collection for account of National Newark Banking Co., Newark, N. J.''

The transaction was treated as if the draft had passed through the Newark bank, although, by agreement between plaintiff and that bank, plaintiff sent out such drafts itself for collection, and accordingly the draft in question was forwarded for collection to the Sage Banking Company, at Alexandria, Missouri, at which point defendant had a factory. The defendant treats that transaction as having been done by the Newark bank. The Sage Banking Company received the draft, and called up defendant company's manager, who came down on the evening of October 13, 1914, between 7 and 8 o'clock, to pay the draft and take up the bill of lading attached, and gave defendant's check on said Sage Banking Company for the full amount. Defendant, as drawee of the draft, had to its credit on the books of the Sage Banking Company about $1,100; yet, at the time the check was given, the bank was insolvent, and had no funds on hand sufficient to pay the draft. The Sage Banking Company did not advise defendant's manager that his check was worthless, or that the bank was in a failing condition. Upon drawing defendant's check, as before stated, and with such worthless check, he took up the draft, received the bill of lading from the bank, and defendant afterwards procured and used the cans covered by the bill of lading. The check was marked across the face, "Paid. Sage Banking Co.'' But it appears that the bank clerk who received the check did nothing further with it, and did not charge it to the account of the defendant on the books of the bank. There was at no time after the check was received sufficient money in the bank to pay it; and the next day, between 1 and 2 o'clock, the bank closed its doors, and thereafter passed into bankruptcy. Later, when the facts were made known to the Newark bank, it, for the purpose of protecting both plaintiff and defendant and all parties in interest, filed a claim in bankruptcy for the amount of the check, said claim setting out the facts and the existence of a dispute as to whether the draft was paid by the check, and as to whether the bankrupt had exceeded his authority as a collecting agent, and expressly stating that the claim was filed without prejudice to any action against the defendant, either by the Newark bank or by plain-

tiff. The claim in bankruptcy was allowed, and dividends paid to the Newark bank, and held by them for the plaintiff and the defendant herein, and for their protection, and after defendant had been requested to prove up for the entire amount of the account, and their refusal so to do. The net amount of the dividends, after deducting some $80 or $90 for expenses of filing and collecting, was credited on the claim sued on herein, as before stated. During the pendency of the bankruptcy proceedings, defendant claiming that the draft covering the purchase of the cans, as well as the account for the cans, was fully paid by the check transaction, this suit was instituted, claiming that defendant owed plaintiff for the cans, and upon the account and the draft drawn therefor. As said, defendant answered, claiming that the draft had been paid by the giving of the check. The trial court found for plaintiff, and in addition directed plaintiff to assign or cause to be assigned to the defendant the balance of said claim in bankruptcy, or to cause to be paid to the defendant all dividends that might thereafter be paid on the claim, such assignment to be made on the demand of the defendant; and so on. The clerk of the Sage Banking Company who transacted the business in question for the Sage Banking Company knew the financial condition of his bank, and that it was insolvent; but, as said, did not advise defendant's superintendent of that fact.

Appellant's contention, as we gather from the errors assigned and brief points, is that plaintiff and the Newark bank selected the Sage Banking Company, at Alexandria, as agent to collect the draft, with bill of lading attached, rather than an agent at St. Louis, Missouri, and selected the Sage Banking Company as its agent to present and receive payment of the draft, thereby justifying defendant in acting as it did in payment of the draft by the check. But the draft was to be paid in cash or its equivalent, whether it was sent to one bank or another. That is the question in the case,—whether, under the circumstances, the check transaction was a payment.

1. Appellant's argument and reply, and the two so-called additional arguments, all four of them, refer to two Iowa cases, *British & Am. Mtg. Co. v. Tibbals,* 63 Iowa 468, 473, and *Griffin v. Erskine,* 131 Iowa 444. While other cases are cited,

appellant seems to rely more especially upon these two. The appellee also relies upon the *Griffin* case and others. Appellee seeks to distinguish the *British & Am. Mtg. Co.* case from the instant case in this: That in that case there were no instructions expressly requiring a cash payment, but, on the contrary, payment by draft was suggested; and that, under the facts, it was shown that they did not expect that the maker should collect the cash and present it at the counter of the bank for payment. They point out that, in the instant case, the Sage Banking Company, by the plain indorsement on the face of the draft, was expressly required to receive nothing but cash. That case was distinguished in *Griffith v. Merchants Life Assn.*, 141 Iowa 414, 417. It is no doubt true that the giving of the check by defendant to the Sage Banking Company was a conditional payment. But it was only a conditional payment. We said, in *Bellevue Bank v. Security Nat. Bank*, 168 Iowa 707, that the general rule is that, when the holder of a check presents it at the counter of the bank upon which it is drawn, and receives payment therefor, the transaction is closed. It was also said in that case that the bank, as the collecting agent, was within its duty in accepting from the maker of the note a check, if it had reason to believe the same to be good; but that the acceptance of such check operated presumptively only as a conditional payment of the note; and that, upon the dishonor of the check, the condition failed, and the holder of the note was entitled to maintain his original cause of action. We said further in that case that whatever difference there may be in the authorities on these propositions, they are sustained by a great weight of authority, and we are committed to them (citing the *Griffin* case and *Dille v. White*, 132 Iowa 327). The opinion quotes from the *Griffin* case to the effect that checks, drafts, and so on are extensively used in commercial transactions, and that, in authorizing an agent to make collections, it may be assumed, in the absence of instructions to the contrary, that the authority is to be executed in the manner usual and customary in the commercial world; that, while the agent may not accept anything but the actual cash in satisfaction of the claim, he may receive a check or draft, negotiable and payable on demand, which he has good reason to believe will be honored on presentation, as a ready and more convenient means

of obtaining the money in conditional satisfaction of the debt; and that, if the instrument is honored by the drawee, payment relates back. The opinion also discusses the question of conditional credit obtained upon the books of the bank as a conditional credit, and says that it is subject to the honor of the checks.

In the instant case, however, there were specific instructions that the draft drawn by plaintiff upon the defendant should be paid in cash only, or its equivalent. Though it appears that the defendant had an amount on deposit with the Sage Banking Company larger than the draft, still the bank, was, at that time, insolvent, and this fact was known to the Sage Bank and to the party who took defendant's check; so that the bank knowingly took a worthless check and sought thereby, as the agent of plaintiff, or of the bank through which plaintiff made the draft, to pay the draft, although authorized to accept only cash or its equivalent. The Sage Banking Company might as well have taken a carload of broken grindstones. Under the authorities before cited, the acceptance of the check would, at most, be a conditional payment. It appears, as before stated, that the check was not charged to the account of the defendant by the Sage Banking Company or its employees. There was, then, no conditional credit on the books of the bank. We do not understand either party to claim anything in that regard, although appellant cites authority to the proposition that the giving of the check by the defendant was an appropriation of the funds in its hands to the payment of the draft. But there were no funds to be appropriated. There was a paper balance in favor of defendant on the bank's books, but the bank was insolvent. We understand appellee to concede that the bank was, in a sense, plaintiff's agent,—that is, for the purpose of collecting the money on the draft. The draft on its face so provides. But they contend, and cite authority for the contention, that by accepting a worthless check the bank exceeded its authority, and that, in regard to such excess of authority, the Sage Banking Company was the agent of the defendant; and further, that, in so doing, it was a matter between the defendant and the Sage Banking Company, which does not affect the rights of the plaintiff, as drawer of the draft, against the defendant. Appellee cites

*Dille v. White,* 132 Iowa 327, 347, to the proposition that the loss incident to the bank's insolvency had already been suffered by defendant as a depositor, and that it cannot shift this loss to the plaintiff by checking it over in payment of the draft, and thus recoup its loss by receiving the goods and keeping them. Other cases are cited by ·appellee to the effect that the insolvency of an agent revokes the agency, and that the acceptance of a draft for collection by an insolvent bank is a fraud. We shall not take the time or space to discuss these latter propositions. On the main proposition, already discussed, we think there was no final or absolute payment of the draft in question by the check given by the defendant to the Sage Banking Company. In addition to the cases already cited, and as having a bearing, see 2 Michey on Banks and Banking, 1395, 1397, and 1482; *McFarland v. Howell,* 162 Iowa 110, 116; 2 Bolles on Banking 600; *Gray Bros. v. Otto,* 178 Iowa 854; *Morris v. Eufaula Nat. Bank,* 106 Ala. 383 (18 So. 11).

Without further discussion, we are of opinion that the trial court rightly decided the case, and the judgment is—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.