# CASES DETERMINED

AT THE

# August Term, 1886.

McLeod, Appellant, vs. Evans, Assignee, etc., Respondent.

*April 10 — September 21, 1886.*

EQUITY: BANKS AND BANKING: VOLUNTARY ASSIGNMENT. *(1) Draft left for collection: Trust fund: Enforcing payment out of assets in hands of assignee. (2) Estoppel: Filing of claim and acceptance of dividend. (3) Parties.*

| 66 | 401 |
|---|---|
| 76 | 515 |
| 66 | 401 |
| 86 | 848 |
| 66 | 401 |
| ₁087 | 244 |
| 66 | 401 |
| 57 LRA | 887 |

1. M. left with H., a banker, for collection, a draft upon a New York bank. H. sent the draft to a bank in Chicago, received credit for the amount, and afterwards made drafts upon such bank which were cashed. Before payment to M., H. made an assignment for the benefit of creditors. At that time nothing was due him from the Chicago bank. *Held*, that the proceeds of the draft were a trust fund in the hands of H., and that, as against other creditors, M. might enforce full payment from the assets in the hands of the assignee, although the trust fund could not be traced to any specific property. [CASSODAY and TAYLOR, JJ., dissent, being of the opinion that the amount of the equitable charge upon the assets should not exceed the benefit to the estate derived from the draft or its proceeds.]

2. After the assignment M. filed his claim as a creditor of H. for the amount of the draft, supposing that the assets were sufficient to pay all claims in full, and, after learning that there would be a deficiency, accepted a dividend from the assignee. *Held*, that he was not thereby estopped to enforce the trust and assert his equitable lien upon all the assets.

3. In an action to enforce such a trust, the creditors of the assignor need not be joined as defendants with the assignee.

APPEAL from the Circuit Court for *Grant* County.

The action was brought against *J. H. Evans*, as assignee of I. Hodges, to recover the sum of $1,500, with interest from February 8, 1884, less a payment of $90, to have the same adjudged a lien upon the estate of Hodges in the hands of the defendant, and payment thereof directed out of such estate. The facts are stated in the opinion.

The answer, among other things, alleged that there was a defect of parties defendant in that the other creditors of Hodges, who had proved their claims according to law and for whom the defendant held in trust the property assigned by Hodges to him, were not joined; and that no determination of the controversy in favor of the plaintiff, and no complete determination of the controversy, could be had without their presence.

As a conclusion of law from the facts found, the circuit court held that the complaint should be dismissed upon the merits, with costs. From the judgment entered accordingly the plaintiff appealed.

For the appellant there were briefs by *Bushnell & Watkins, A. W. & W. E. Bell*, and *J. W. Murphy*, and oral argument by *Mr. A. W. Bell* and *Mr. Bushnell*. They argued, among other things, that it is not necessary, to entitle the plaintiff to the relief asked, that the identical proceeds of the draft should be found in the hands of the assignee. "If the trust estate has been tortiously disposed of by the trustee, the *cestui que trust* may attach and follow the property that has been substituted in place of the trust estate, so long as the substituted property can be traced." Snell's Eq. (Lawson's ed.), 155. "The identity does not consist in specie, that is in the particular pieces of coin, but in the fund itself." Tiff. & Bull. Trusts, 33; *U. S. v. Waterborough*, Davies, 154; *Goepp's Appeal*, 15 Pa. St. 428. "The difficulty of identification does not arise where the trust property is still in the hands of the trustee, because in laying out trust moneys a trustee must be careful to keep his

own property separate from the trust fund; and if he mix them, the *cestui que trust* will be held entitled to every portion of the blended property which the trustee cannot prove his own." Snell's Eq. *supra; Frith v. Cartland*, 2 Hem. & M. 417; *Pennell v. Deffell*, 4 De Gex, M. & G. 372; *National Bank v. Insurance Co.* 104 U. S. 54; *Knatchbull v. Hallett*, L. R. 13 Ch. Div. 696; *Dows v. Kidder*, 84 N. Y. 121, 132-3; *Van Alen v. Am. Nat. Bank*, 52 id. 1; *Farley v. Turner*, 3 Jur. (N. S.), 532; *S. C.* 26 L. J. Ch. 710; *In re Agra & M. Bank*, 36 id. 151. If the trust property is *money*, and the court finds in the hands of the assignee money enough to make it good, it should be made good. The question does not turn upon there being enough money in the bank at the time of the assignment to make good the trust. *People v. City Bank of Rochester*, 96 N. Y. 32; *Peak v. Ellicott*, 30 Kan. 156; *S. C.* 56 Am. Rep. 90. An assignment for the benefit of creditors can only affect those creditors whose claims arise and are founded upon contract express or implied. Claimants whose claims grow out of a breach of trust, such as embezzlement by the assignor, are not bound by the assignment, but can pursue any remedy the law affords, irrespective of the fact that an assignment has been made. And a release under the assignment laws, either state or national, will not bar claims founded upon a fraud and breach of trust by the assignor. *In re Patterson*, 1 Bankr. Reg. 58; *In re Seymour*, 6 Int. Rev. Rec. 6; *S. C.* 1 Bankr. Reg. 29. The use of the proceeds of the draft by Hodges was a tortious conversion of the plaintiff's property. *Rodick v. Coburn*, 68 Me. 170; *Holton v. Smith*, 7 N. H. 446; 2 Greenl. on Ev. sec. 642. He was merely employed as an agent, having no right, title, or interest in the draft or proceeds thereof. If he betrayed the trust reposed in him he became liable as a trustee of the plaintiff. If he used these funds to discharge his liabilities, thereby reducing such liabilities and increasing his assets for the benefit and advan-

tage of his creditors, what right, in law or equity, have they to complain if the plaintiff should be paid in full the money so tortiously taken from him. The acceptance of a dividend under the circumstances in this case, or in any case under our statute, cannot operate as an estoppel or a release. The plaintiff did not, by filing notice that he had a claim, become a "party" to the assignment so as to prevent him from maintaining an action upon the claim arising through the fraud of the assignor. Burrill on Assignm. 675, sec. 482; *Hoskins v. Alcott*, 13 Ohio St. 211; *Crutchfield's Heirs v. Hudson*, 23 Ala. 393; *Bank v. Deming*, 17 Vt. 366. If the assignee had expended and the creditors had received money on the strength of said filing, and it was a question as to whether the assignee should pay it himself or the creditors should pay it back, the plaintiff might be estopped. But no such fact appears. *Winegar v. Fowler*, 82 N. Y. 315; *Payne v. Burnham*, 62 id. 69; Tiff. & Bull. Trusts, 491. The doctrine of estoppel is applied to promote justice and fair dealing, never to aid a fraudulent purpose. *Royce v. Watrous*, 73 N. Y. 597. An assignment for the benefit of creditors does not pass estates or property held in trust. *Ludwig v. Highley*, 5 Pa. St. 132; *Abbot, Petitioner*, 55 Me. 580. If the assignee takes possession of the trust property or the proceeds or benefits thereof, he will still hold it upon trust. 1 Perry on Trusts, 334–336; *Cook v. Tullis*, 18 Wall. 332; *Kelly v. Scott*, 49 N. Y. 595; *In re McKay*, 1 Lowell, 345; *Chace v. Chapin*, 130 Mass. 128; Tiff. & Bull. Trusts, 346; *May v. Le Claire*, 11 Wall. 217. The action to enforce such trust is properly brought against the assignee alone. The validity of the claims of other creditors is not attacked, and sec. 1699, R. S., is therefore inapplicable. *King v. Lawrence*, 14 Wis. 238; *Board Sup'rs Iowa Co. v. M. P. R. Co.* 24 id. 127; *Day v. Wetherbee*, 29 id. 370; *Hubbard v. Burrell*, 41 id. 372; Wait's Fraud. Conv. sec. 137; Pomeroy on Remedies, secs. 357–8.

McLeod vs. Evans, Assignee, etc.

For the respondent there was a brief by *Carter & Cleary*, and oral argument by *Mr. Carter.* They contended, *inter alia*, that the question is this: Has the owner of a chattel or a chose in action, who places it in the hands of another for a special purpose, not only a right to the possession of the chattel or chose in action itself so long as it remains in existence and can be found and identified, and to its proceeds or any other thing into which it may be converted, or to follow it into any other form into which it may be traced and identified, but also a lien in equity upon the general property of the bailee for the value of the chattel or chose in action, where the bailee has wrongfully converted it to his own use, so that it can no longer be found, traced, or identified? No such lien has ever been held to exist. The rule is that " the right to follow a trust fund ceases when the means of ascertainment fail, which, of course, is the case when the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description." Story's Eq. Jur. sec. 1259; Dunlap's Paley on Agency, 90; *Kip v. Bank of New York*, 10 Johns. 63; *Whitcomb v. Jacob*, 1 Salk. 160; *Trecothick v. Austin*, 4 Mason, 29; *Scott v. Surman*, Willes, 404; *Ex parte Moldaut*, 3 Deacon & C. 351; *Bank of Commerce v. Russell*, 2 Dill. 215; *In re Coan Mfg. Co.* 12 Nat. Bankr. Reg. 203; *In re Janeway*, 4 id. 100; *Ill. T. & S. Bank v. First Nat. Bank*, 15 Fed. Rep. 858; *In re Vetterlein*, 26 id. 145; *Thompson's Appeal*, 22 Pa. St. 16; *People v. Merchants' & Mech. Bank*, 78 N. Y. 271; *Butler v. Sprague*, 66 id. 392, 395; *Ferris v. Van Vechten*, 73 id. 120; *Van Alen v. Am. Nat. Bank*, 52 id. 4; *National Bank v. Insurance Co.* 104 U. S. 68, 70; *Dows v. Kidder*, 82 N. Y. 121; *Cook v. Tullis*, 18 Wall. 332; *Allen v. Russell*, 78 Ky. 105; *Parker v. Jones' Adm'r*, 67 Ala. 234; *Cragie v. Hadley*, 99 N. Y. 131. The plaintiff has no equity to take the property of other creditors to replace

what he has lost. His claim is no more meritorious than those of depositors. *Ill. T. & S. Bank v. First Nat. Bank,* 15 Fed. Rep. 860. By filing his claim as an ordinary creditor and by accepting a dividend, he ratified the conduct of Hodges and is now estopped to repudiate the position so taken by him. The defendant is not the real party in interest. The action should have been against the creditors, or, at least, they should have been joined as defendants. The statute (sec. 1699, R. S.) provides the method in which one creditor may attack the claim of another.

The following opinions were filed May 15, 1886:

COLE, C. J. This is a suit in equity to recover in full from the defendant, who is an assignee of one Hodges, the proceeds of a draft of $1,500. The first most serious question of law we have to consider arises upon these facts found by the learned circuit court: The plaintiff had a draft for $1,500, drawn on the Ninth National Bank of New York city. Desiring to cash this draft, he went to the bank of Mr. Hodges, in the city of Platteville, on the 30th of January, 1884, to get the money upon it. Hodges told him that he was not in funds at the time so as to cash the draft, but said he would collect it for him. Thereupon the plaintiff left with Hodges the draft for collection, and took a receipt, which reads as follows: "PLATTEVILLE, WIS., 1–30–84. By Robert E. McLeod, for collection. Currency, ——; coin, ——; checks, ——. Ninth National, New York. $1,500. O. F. GRISWOLD, Cashier." Mr. Hodges told the plaintiff to return in a week, when he expected the money would be there for him. At the end of the week the plaintiff came to the bank, but was informed by Hodges that the money had not yet come from the Ninth National Bank of New York; that it took some time to make collections of this kind; whereupon the plaintiff went away, and did not again return until after Hodges had suspended banking

business, which was on the evening of the 8th of February, 1884. As a matter of fact the draft was not sent by Hodges to the Ninth National Bank of New York for collection, but was sent to the National Bank of America, Chicago, with which bank Hodges did his business in that city. The Chicago bank did not, for such draft, send the cash to Mr. Hodges, but gave him credit for the amount on its books, and Mr. Hodges drew on that bank, after this, drafts which were cashed by the bank; and at the time Hodges suspended banking business there was nothing due him from the Chicago bank. It is admitted that on the 11th of February, 1884, Hodges assigned to the defendant all his property for the benefit of his creditors. Among the assets, there was $500 cash in Hodges' bank which came to the hands of the defendant, but it does not appear that this sum was a part of the proceeds of the $1,500 draft.

Now, the first question upon this state of facts is, Does the plaintiff stand upon the same ground as the other creditors of Hodges in respect to the estate in the hands of the assignee, or has he a paramount right to be paid first out of such assets? The argument of the plaintiff's counsel in support of his superior right in equity is briefly this: That the collection of the draft was a trust assumed by Hodges; that neither the draft nor its proceeds belonged to him; that it was his plain duty to collect it, and keep its proceeds separately, and deliver them to the plaintiff when demanded; that it was a gross fraud on his part not to do so; that he knew when he received the draft for collection he was in failing circumstances and largely insolvent; that the testimony indisputably shows that it was a mere pretense that he had sent the draft to New York for collection; that he really had the avails of it when the plaintiff called for his money at the end of the week as he was directed to do, and was told that it had not come. It is said the relation between Hodges and the plaintiff was not that of debtor and

creditor, but that a fiduciary relation existed between them; that the proceeds of the draft were a trust fund in his hands which did not belong to him, and which the assignee could not take as a part of his estate. Counsel says that "the general proposition which is maintained, both at law and in equity, upon this subject is that if any property, in its original state and form, is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in any right (not being *bona fide* purchasers for a valuable consideration, without notice), any more valid claim in respect to it than they respectively had before such change. An abuse of a trust can confer no rights on the party abusing it, or those who claim in privity with him." 2 Story's Eq. Jur. § 1258; Snell's Eq. 155.

The counsel on the other side does not challenge the correctness of this argument, or the soundness of the principle of law relied on, but he says they have no just application to the facts here, because the proceeds of the draft cannot be traced to, or identified in respect to, any property which has come to the hands of the assignee. Consequently, he says the plaintiff's claim is simply this: because he left his draft for collection with the assignor, which the latter wrongfully converted, that this gives him a lien in equity upon the general property of the wrong-doer for its value. The able counsel frankly admits if the proceeds of the draft had been found in the safe of Mr. Hodges when the assignment was made, with marks to identify the fund, that then such proceeds would not have passed to the defendant. He also concedes if the proceeds could be traced into any other property into which they had been converted, or had been mixed by Hodges with his own funds, that then the plaintiff could claim such property, or follow and reclaim the proper amount of money, as against the world. This would be so, because he was the real owner, Hodges

holding the proceeds only as his agent, as trust funds; or the property into which the proceeds had been converted would be impressed with the trust. But it is said none of the proceeds of that draft are in the hands of the assignee, nor is there any security bought or obtained by the draft in his possession. Still, these facts are indisputable: The Chicago bank to which Hodges sent the $1,500 draft gave him credit for the amount on its books. Hodges drew against that credit in the regular course of his business as a banker, and his drafts were honored by the drawee. Presumably, Hodges obtained money for his drafts which he used in the transaction of his business or applied to the payment of his debts. So, these funds which he obtained by his own drafts against the $1,500 credit were substituted for the proceeds of the $1,500 draft, and went into his estate. The conclusion is irresistible, from the facts, that the proceeds of the trust property found its way into Hodges' hands, and were used by him either to pay off his debts or to increase his assets. In either case, it would go to the benefit of his estate. It is not to be supposed the trust fund was dissipated and lost altogether, and did not fall into the mass of the assignor's property; and the rule in equity is well established that so long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust.

The authorities cited by plaintiff's counsel fully sustain this proposition. We do not understand that it is necessary to trace the trust fund into some specific property in order to enforce the trust. If it can be traced into the estate of the defaulting agent or trustee, this is sufficient. The decisions in *Frith v. Cartland*, 2 Hem. & M. 417; *Pennell v. Deffell*, 4 De Gex, M. & G. 372; *Knatchbull v. Hallett*, L. R. 13 Ch. Div. 696; *National Bank v. Insurance Co.* 104 U. S. 54; *Van Alen v. Am. Nat. Bank*, 52 N. Y. 1; *People v.*

*City Bank of Rochester*, 96 N. Y. 32; *Farmers' & M. Nat. Bank v. King*, 57 Pa. St. 202; *Peak v. Ellicott*, 30 Kan. 156,— in principle sustain this conclusion. The cases in 96 N. Y. and 30 Kan. are directly in point. In *People v. City Bank of Rochester* the head-note states the decision as follows: " The Bank of R. having discounted certain notes for the firm of S., H. & F., a depositor with it, and that firm wishing to anticipate payment, gave to the bank its checks for the amount of the notes, less rebate of interest, which checks the bank received and charged in the firm account, and entries were made in the bank-books to the effect that the notes were paid. The firm at the time supposed that the bank held the notes, but they had in fact been previously sold by it. Before the notes became due the bank failed, and, in an action brought by the attorney general in the name of the people, a receiver was appointed of its property and effects. Held, that an order requiring the receiver to pay the notes out of the funds in his hands was properly granted; that the transaction between the bank and said firm was not in their relation of debtor and creditor, nor in that of bank and depositor, but by it a trust was created, the violation of which constituted a fraud by which the bank could not profit, and to the benefit of which the receiver was not entitled." The ruling in the Kansas case was to the same effect, upon a similar state of facts. The court say in the opinion, by HORTON, C. J., that " the defendant, as assignee of the bank, succeeds to all the rights of the bank, but as such assignee he has no lawful authority to retain a trust fund in his hands belonging to the plaintiff, and which the bank at the time of receiving the same promised and agreed to apply in payment of plaintiff's note. As the money was a trust fund, and never belonged to the bank, its creditors will not be injured if it is turned over by the assignee to its owner."

The case of *People v. Merchants' & M. Bank*, 78 N. Y.

269, to which we were referred by defendant's counsel, as we understand it, contains nothing in conflict with the *Rochester Bank Case, supra.* In the former case the Chemical Bank of New York received a check on the M. & M. Bank of Troy, drawn by the T. & B. R. R. This check the Chemical Bank sent by mail to the M. & M. Bank for the purpose of being paid. The latter bank debited the railroad company in its account, which was good, with the amount of the check, and returned it to that company as paid. It also sent to the Chemical Bank a draft on a New York bank for the amount of the check. Two days after the M. & M. Bank closed its doors, and a receiver of its assets was appointed. The draft on the New York bank was not paid. The Chemical Bank applied for an order directing the receiver to pay the amount of the check on the ground that the assets came to his hands impressed with a trust in its favor. On these facts the court held that "to authorize the relief prayed for it was necessary to trace into the hands of the receiver money or property belonging to the Chemical Bank, or which had before the receivership been set apart and appropriated to the payment of the check; that charging said check, and returning it to the drawer, did not amount to a payment, and setting apart of sufficient of the drawer's deposit to cover it; nor did it impress a special trust on any part of the drawer's assets; but by the transaction the drawee simply reduced its indebtedness to its depositor to the amount of the check, and constituted itself a debtor to the holder to a corresponding amount." The case is clearly distinguishable from the one we have before us.

The same counsel has referred us to numerous cases where the simple relation of creditor and debtor or bank and depositor existed, and where all preference of one creditor over another for payment out of assets has been denied. But this case stands on entirely different grounds.

The evidence is entirely conclusive that the plaintiff left his draft with Hodges for collection, and for no other purpose. Hodges was merely his agent to perform that specific duty. He had no more right to use the proceeds of the draft in his business than a merchant or lawyer would have who had been intrusted with it for a like purpose. Beyond all controversy the proceeds of the draft in Hodges' hands were a trust fund. He having used them in his business,— having benefited his estate by such use,— as we must assume, a trust attaches to that estate which came to the defendant under the assignment.

It appears that the plaintiff learned of the assignment which was made by Hodges, and in due time filed his claim as a creditor of the assignor to the amount of $1,500; that at the time he filed his claim he believed from reports that the bank of Hodges would pay dollar for dollar to its creditors; that subsequently, when a six per cent. dividend was declared, he, as a creditor, took the six per cent. upon his claim allowed, and at that time had learned that the bank could not pay in full, but that there would be a large deficiency. The question is, Has the plaintiff, by proving his claim as an ordinary creditor, waived or lost his right to insist upon his equitable lien? We think not. The plaintiff, doubtless, acted not only in ignorance of his legal rights, but also under a mistake as to the solvency of Hodges' bank. He had a right to suppose from the schedule of its assets and liabilities that all debts would be paid in full. It is said he knew to the contrary when he received the dividend, which he retains. But he has only received a portion that was due him. The rights of no one have been prejudiced by this. No one has changed his position, or lost any advantage which the law gave him, in consequence of what the plaintiff did in the matter; and there are no facts upon which a waiver or equitable estoppel can be fairly predicated.

There is no defect of parties.

It follows from the views that we have expressed that the judgment of the circuit court must be reversed and the cause remanded with directions to grant the relief asked.

CASSODAY, J.   I fully indorse what is termed the "progressive" or "modern rule" of equity, as stated by JESSEL, the late learned master of the rolls, in *Re Hallett's Estate*, L. R. 13 Ch. Div. 696, to the effect that if a person holding money as a trustee, or in a fiduciary character, pays it to his account at his banker's, where it is mixed with his own money, and thereafter draws out sums by checks in the ordinary manner, he must be taken to have drawn out his own money in preference to the trust money.   In that case the trustee, Hallett, died, and the action was for the administration of his estate.   The question arose upon claims by several persons against moneys in the hands of Hallett's bankers.   There was no question as to the solvency of the estate.   There was no dispute that the money received by Hallett for the bonds he improperly sold was deposited with his bankers to the credit of his account, and "that the money remained at his banker's mixed with his own money at the time of his death."   It was simply held that the *cestui que trust* could take the proceeds of the sale if they could be identified, and, if not identified, but traceable into other property, or a mixed fund, then she could have a charge or equitable lien upon such other property or fund for the payment of the amount which her money had increased the fund.   Such seems to be the well-established rule.   Here the draft did not go into the assets of Hodges' Bank.   He sent it to the Chicago bank, where it was credited to his general account.   Whether his account with the Chicago bank was then overdrawn or not does not appear, but when he failed, a few days later, it was overdrawn $1,200.   At that time there was only $600 in the bank.   The

assets which went into the hands of the assignee included nothing dated within a month.

It conclusively appears from the undisputed evidence, and is, in effect, found by the court, that the assets which came into the hands of the assignee neither include the draft nor the proceeds arising therefrom, nor anything taken in exchange for it, or any part of it, unless it was the $600. Of course, the plaintiff has no right of action against the assignee personally. He seeks to charge the assets in the hands of the assignee only by reason of a supposed equitable lien. Upon what theory was he entitled to it? If so, for what amount? The mere wrongful conversion of the draft by Hodges certainly gave the plaintiff no equitable lien upon property belonging to him prior to such conversion, nor upon assets subsequently acquired from sources entirely outside and independent of, and wholly foreign to, the draft or the proceeds of it. To say that it does, is to hold that such wrongful conversion of itself gave the plaintiff a preference over all other creditors, regardless of what became of the draft or the proceeds of it. I am not aware of any adjudicated case sanctioning such a preference. An equitable lien exists only when the trust money is directly or indirectly traceable to the fund sought to be charged. Such, as I understand, are the cases cited in the opinion of the chief justice.

It is probable, as claimed, that the draft, or the proceeds of it, were used by Hodges prior to the assignment in payment of some of his debts. But this would in no way swell the volume or value of his *assets* which went into the hands of the assignee. It would merely diminish the amount of his indebtedness to the extent of such payment. That would, in a general way, benefit the estate to the extent that it increased the per cent. that the other creditors would in consequence receive. But as this estate is badly insolvent, the aggregate amount of such increase would necessa-

rily be very much less than the amount of the draft. The amount of the equitable charge upon the assets ought not, upon any principle of equity, to exceed the amount of benefit to the estate derived from the draft or its proceeds. None of the authorities cited, as it seems to me, go any further, and some of them not as far. In so far as the assets of the estate in the hands of the assignee are held chargeable beyond the amount of benefit which the estate derived from the draft or its proceeds, the equitable doctrine of the cases cited, and many others which might be cited, has, as it seems to me, been misapplied. I cannot join in sanctioning such a departure from a rule so well established and so thoroughly equitable.

TAYLOR, J. I concur in the opinion of Justice CASSODAY.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to grant the relief asked.

A motion for a rehearing was denied September 21, 1886.