CITIZENS NATIONAL BANK OF DANVILLE, KY., *v.* HAYNES, receiver.

HILL, J.   1.   Where one bank sent certain notes to another bank for collection, with instruction that "all payments that are made on these collections are to be remitted by you to this bank on the day same are made," but instead of obeying the instruction the bank deposited the collections made to the credit of the sending bank, and used the money in its own business; and where on the failure of the latter bank a receiver was appointed, who collected certain other sums of money due the collecting bank, such money was not impressed with a trust in favor of the sending bank, so as to give it a priority over the general creditors and depositors of the collecting bank.   *Ober & Sons Co.* v. *Cochran*, 118 *Ga.* 396, 406 (45 S. E. 382, 98 Am. St. R. 118) ; *Tiedeman* v. *Imperial Fertilizer Co.*, 109 *Ga.* 661, 666 (34 S. E. 999).

2.   The trial judge, to whom was submitted both questions of law and fact, did not err, under the pleadings and the evidence, in entering a general judgment for $782.90 in favor of the plaintiff against the receiver, and in directing that the plaintiff should share with other general creditors in the dividend already declared and any other funds the receiver might thereafter have for distribution.

> *Judgment affirmed.   All the Justices concur.*
> DECEMBER 18, 1915.

Intervention.   Before Judge Conyers.   Jeff Davis superior court.   October 26, 1914.

The Citizens National Bank of Danville, Ky., filed its intervention in the case of the State of Georgia against the Farmers Bank of Hazlehurst, Georgia, in which F. M. Haynes was appointed receiver for the last-named bank.   The intervenor alleged substantially as follows:   On September 25, 1913, it placed with the Farmers State Bank (hereinafter called the bank) notes of D. Dunnegan, pledged by him to intervenor as collateral security for the sum of $5140, and, in so doing, wrote the following specific instructions to the bank as its trustee:   "Sept. 25, 1913.   Farmers State Bank, Hazlehurst, Ga.   Gentlemen:   Herewith I send you by registered mail, for collection and returns, the following notes which are collateral on our B. D. 25933, namely: [giving the number and amount of each note and the name of the payee].   Mr. Dunnegan, our endorser on these notes, expects to be in your community by the first of October or a few days after, at which time he will co-operate with you in your efforts to get these notes paid.   All payments that are made on these collections are to be remitted by you to this bank on the day the same are made.

Whenever Mr. Dunnegan thinks any note or notes should be placed in the hands of an attorney for collection, we will expect you to put said note or notes in the hands of some competent, reliable attorney. Upon receipt of this, I would like to have you write me the name of the best attorney as to financial responsibility, ability, and energy in your town. All these notes are sent you no protest. Hoping you and Mr. Dunnegan will succeed in making rapid collection of these notes and returning proceeds to this bank promptly, I am, Respectfully, J. A. Quisenberry, Cashier." The notes were accepted by the employees of the bank upon the express terms and conditions contained in the instructions above quoted, which at the time of remitting the notes accompanied them. The bank, prior to its failure and the appointment of the receiver, collected from the notes the sum of $792.80, which fact was unknown to the intervenor until after the failure of the bank and the appointment of its receiver. At no time did the intervenor intend to become a creditor or depositor of the bank, neither would it have done so during the course of its business transactions with the bank; but it was the express intention and purpose of the intervenor to create the bank a trustee "as a medium of transportation of the funds received by it for intervenor," and the bank so understood the purpose and intention and the true relation and terms of the contract entered into by the intervenor and the bank, so that the bank was the trustee to accept and receive and forward on each day the whole amount collected from the notes deposited with it by the intervenor; and the bank received and accepted and obligated itself to collect and receive payments on the notes as the trustee of the intervenor, and to remit each day's collection on the day made. It was never in contemplation of the contract that any fund collected or paid on the notes by the debtors, or collected from the debtors by the agent of the intervenor, should be received and held for any length of time greater than was actually necessary to transmit from the hands of the bank to the intervenor. By reason of the collection of the notes in the sum of $792.80 and the retaining of that amount by the bank, it had assets to the above-stated amount over and above that which it otherwise would have had, and over and above that to which it was entitled; and all of the money now in the hands of the receiver, or that may come into his hands from the reducing of any of the assets of the

bank to cash, is burdened with and subject to a preference in favor of the intervenor as a trust fund for its use, for the reason that the common depositors, who by operation of law become the creditors of the bank, are and can be in no way injured by paying from the first funds collected from the assets of the bank, or from the money now in the hands of the receiver, the amount collected by the bank, under the express terms of the contract hereinbefore set out, as the trustee of intervenor. Intervenor is entitled to a preference over the common depositors and lien creditors, if such there be, upon the notes in the hands of the receiver of the bank, for the reason that the trust fund collected by it was loaned to the makers of the notes, which are the equivalent of and represent the trust fund so collected by the intervenor's trustee, and without its consent and against its express contract invested by the bank in its assets. Investing the collections made from the notes of intervenor in the property and assets of the bank was a crime, in that the officer so investing was guilty of embezzlement of the funds of intervenor, and it is entitled to trace the investments and burden the assets of the bank with a preference sufficient in amount to pay off the funds so misappropriated and embezzled by the bank. At the time the bank accepted the notes from the intervenor and became its special trustee for the purpose of collecting and remitting on each day the collections made, it was insolvent; and for this reason the intervenor is entitled to a preference out of the assets and funds of the bank in amount sufficient to liquidate the funds so collected and misappropriated by the bank. It was never in contemplation of the contract between intervenor and the bank that any fund collected from the notes entrusted to it should be credited to the account of intervenor either as a general or special depositor, or in any way whatever; but it was expressly agreed that any fund collected on any of the notes should be remitted promptly on the day collected; and any diversion of any fund by the bank, or by any officer thereof, was a crime under the law; and for this reason intervenor is entitled to a preference and superior lien on any funds in the bank, or any funds arising from the sale of any of its property or assets. Intervenor prayed that it be made a party to the case; and that upon the trial the receiver be directed to pay from the funds in his hands, or from any funds arising

from the sale of any assets of the bank the sum of $792.80, with interest, etc.

The receiver answered substantially as follows: At the time of the failure of the bank and the taking charge of its assets, there appeared upon its books a deposit in favor of the intervenor in the sum of $792.80. The intervenor is a general creditor of the bank, and is not entitled to any preference or priority, in that whatever sums were collected by the bank were placed to the credit of the intervenor upon the books of the bank, and the deposit is a general deposit and not entitled to any preference or priority. Whatever amounts had been collected by the bank for the intervenor prior to the failure of the bank had not been kept separate and apart from the other assets of the bank, but had been mingled with the other assets of the bank in such manner that it would be impossible to trace them and burden them with a priority in favor of intervenor. At the time defendant took charge of the bank as receiver, the funds arising from the collection of any note for the intervenor were not in the bank, as there was in the vaults of the bank at that time only the sum of $27.87. As receiver he had collected from all sources since his appointment the sum of $13,087.35, and has paid out, on authority of the court, the sum of $758.95, leaving a balance on hand at this time of $12,328.40, and the bank is owing to demand depositors, including intervenor and other depositors, various amounts which will be shown in detail by the report of the receiver, etc.

The case was submitted to the trial judge, without the intervention of a jury, as to the law and the facts, on the pleadings and an agreed statement of facts. The court rendered a judgment denying the prayers of the intervenor's petition, but entered in lieu thereof a general judgment in its favor for $792.80 principal against the receiver, to share with other general creditors in the dividend that day declared and in any other funds he may hereafter have for distribution. To this order the intervenor excepted.

*Hendricks & Hendricks*, for plaintiff.

*J. Mark Wilcox* and *Bennett & Swain*, for defendant.