## UNITED STATES NATIONAL BANK OF OMAHA, NEBRASKA, *v.* GLANTON, receiver.

Where one bank sends a draft to another bank for collection, without any specific instructions, and, in the usual course of business, the receiving bank collects the draft by accepting a check of the drawee, drawn on itself, and charging the amount thereof against the drawee's account, this transaction does not establish the relation of trustee and cestui que trust between the two banks as to the amount of the draft; but it does establish the relation of debtor and creditor, the forwarding bank having no preference over general creditors.

MAY 16, 1917.

Intervention. Before Judge Freeman. Troup superior court. September 16, 1916.

At the instance of the State of Georgia a receiver was appointed for the Bank of West Point. The United States National Bank of Omaha, Nebraska, filed an intervention to the proceedings in the superior court, in which it sought the payment of a draft entrusted

to the Bank of West Point for collection. By agreement of the parties the case was heard by the court without the intervention of a jury. The court held that the intervenor was a common creditor, and was not entitled to any preference or priority over other creditors. The intervenor excepted. The material facts as deduced from the evidence were as follows: The intervenor sent to the Bank of West Point, for collection, a draft for $922.45 on the West Point Wholesale Grocery Company. The Bank of West Point collected the draft on January 12, 1916, receiving a check, drawn by the West Point Wholesale Grocery Company on the Bank of West Point, in settlement of the draft. The check was charged to the general checking account of the West Point Wholesale Grocery Company, and the Bank of West Point issued its check on the Hanover National Bank and mailed it to the intervenor. No cash was paid on the draft by the drawee. After the payment of the draft the Bank of West Point continued to do a general banking business until the close of business on January 18, 1916. The transaction was regular and in accordance with the usual customs of banking business. Payment of the draft was stopped, on January 18, 1916, by the State bank examiner in charge of the Bank of West Point; and payment was refused by the Hanover National Bank. The cash on hand in the Bank of West Point was as follows on the days stated: January 11, 1916, $11,581.88; January 12, $10,667.97; January 13, $8,750.18; January 14, $8,004.92; January 15, $5,808.37; January 17, $6,742.28; January 18, $5,-023.49.

*Hatton Lovejoy*, for plaintiff in error, cited: National Life Ins. Co. *v.* Mather, 118 Ill. App. 491; Kansas State Bank *v.* First National Bank, 62 Kan. 788 (64 Pac. 634); Arnot *v.* Bingham, 55 Hun, 553 (9 N. Y. Supp. 68); Board of Commissioners *v.* Wilkinson, 119 Mich. 655 (78 N. W. 893, 44 L. R. A. 493); Woodhouse *v.* Crandall, 197 Ill. 104 (64 N. E. 292, 58 L. R. A. 385); Knetchbull *v.* Hallett, L. R. 13 Ch. D. 696; In re Johnson, 103 Mich. 109 (61 N. W. 352); Importers & Traders Bank *v.* Peters, 123 N. Y. 272 (25 N. E. 319); Hunt *v.* Townsend (Tex Civ. App.), 26 S. W. 310; Continental Bank *v.* Weems, 69 Tex. 489 (6 S. W. 802); Guignon *v.* First National Bank, 22 Mont. 140 (55 Pac. 1051); Plano Mfg. Co. *v.* Auld, 14 S. D. 512 (86 N. W. 21, 86 Am. St. R. 769); Butler *v.* Western German Nat. Bank, 159

Fed. 116 (86 C. C. A. 306); Merchants Nat. Bank *v.* School District, 94 Fed. 705 (36 C. C. A. 432); Boone County Nat. Bank *v.* Latimer, 67 Fed. 27; State *v.* Bank of Commerce, 54 Neb. 725 (75 N. W. 28); People *v.* Merchants' Bank, 92 Hun, 159 (36 N. Y. Supp. 989).

*R. H. Freeman* and *A. H. Thompson,* for defendant in error, cited: *Ober & Sons Co.* v. *Cochran,* 118 *Ga.* 396 (45 S. E. 382, 98 Am. St. R. 118); *Citizens Nat. Bank* v. *Haynes,* 144 *Ga.* 490 (87 S. E. 399); *Cronheim* v. *Postal Tel. Co.,* 10 *Ga. App.* 716 (74 S. E. 78); Bowman *v.* First Nat. Bank, 9 Wash. 614 (38 Pac. 211, 43 Am. St. R. 870); First Nat. Bank *v.* Davis, 114 N. C. 343 (19 S. E. 280, 41 Am. St. R. 795); Union Nat. Bank *v.* Citizens Nat. Bank, 153 Ind. 44 (54 N. E. 97); Akin *v.* Jones, 93 Tenn. 353 (27 S. W. 669, 25 L. R. A. 523, 42 Am. St. R. 921); Philadelphia Nat. Bank *v.* Wilmington &c. R., 77 Fed. 49; Anheuser-Busch Brewing Asso. *v.* Clayton, 56 Fed. 759 (6 C. C. A. 108); Peters Shoe Co. *v.* Murray, 31 Tex. Civ. App. 259 (71 S. W. 377); State ex rel. Corp. Com. *v.* Merchants & Farmers Bank, 137 N. C. 697 (50 S. E. 308, 2 Ann. Cas. 537); Gonyer *v.* Williams, 168 Cal. 452 (143 Pac. 736); Young *v.* Teutonia Bank, 134 La. 879 (64 So. 806); 1 Michie on Banks, 625; Freiburg *v.* Stoddard, 161 Pa. 259 (28 Atl. 1111); Insurance Co. *v.* Caldwell, 59 Kans. 156 (52 Pac. 440); Drovers' Nat. Bank *v.* Roller, 85 Md. 495 (37 Atl. 30, 36 L. R. A. 767, 60 Am. St. R. 344); Slater *v.* Oriental Mills, 18 R. I. 352 (27 Atl. 443); Ferchen *v.* Arndt, 26 Ore. 121 (37 Pac. 161, 29 L. R. A. 664, 46 Am. St. R. 603); Italian Fruit Co. *v.* Penniman, 100 Md. 698 (61 Atl. 694, 1 L. R. A. (N. S.) 252); Billingsly *v.* Pollock, 69 Miss. 759 (13 So. 828, 30 Am. St. R. 585); Commonwealth *v.* Tradesman's Trust Co., 250 Pa. 378 (95 Atl. 577); Shields *v.* Thomas, 71 Miss. 260 (14 So. 84, 42 Am. St. R. 458).

GILBERT, J. (After stating the foregoing facts.) The question to be determined in this case is, whether the United States Bank of Omaha, hereinafter called the intervenor, is entitled to a preference over general creditors of the insolvent Bank of West Point, by reason of the facts set out in the record. The solution of this question has been simplified by the clear statement of the contentions in the briefs of counsel for the respective sides. Both sides admit that there must be an identification of the funds collected by the

insolvent bank, in the hands of the receiver, before there can be a preference. Both sides agree that the intervenor can have no preference or priority in the general assets of the insolvent bank, nor in any collections made by the receiver. Both sides admit that the relation of trustee and cestui que trust between the insolvent bank and the intervenor must have existed, and that the funds collected constituted a trust fund, before there can be a preference over the general creditors. Counsel for the plaintiff in error contends that the transaction constituted such a trust relation. The plaintiff in error further contends that payment of the draft by the drawee by means of a check, instead of cash, in no way affects his rights, since the result is the same in either instance. Thus it will be seen that the only disputed issues are: (1) Did the payment of the draft by a check instead of cash change the legal character of the transaction, and thus alter the rule? (2) Do the facts constitute a trust relation entitling the intervenor to a preference over general creditors? Should the latter question be answered in the affirmative, then, and then only, it must be determined if the proceeds of the collection have been definitely traced and identified.

As is seen from what precedes, counsel by the exercise of great ability and zeal have furnished an elaborate array of authorities to support their respective contentions. The transaction at the base of the litigation is of such frequent and ordinary occurrence in the channels of business that it has often been the subject-matter of judicial deliverance. It is not to be wondered that the courts have disagreed, especially since there is not wanting a basis for strong and appealing argument on both sides of the question. While this is true, there is not so much real conflict of principle as the alignment in the briefs would indicate. Some of the cases differ only because of special facts peculiar to themselves. It is useless to consume time and space in a vain endeavor to reconcile conflicting cases; for the decisions themselves abound in such discussions, explanations, modifications, and retractions. This court has discussed many of the decisions on the question, and we are already committed on the fundamental principles underlying the case.

We think that the rule applying to such transactions is not altered by reason of payment of the draft by a check. We agree with counsel for the plaintiff in error that the practical result is the

same whether payment was by a check, or whether the drawee, who was a customer of the Bank of West Point, undertook the useless routine of first drawing out the money, and then paying it back into the same bank, except that when there is payment by a check the difficulty of tracing and identification is much greater.

In *Pollak* v. *Niall-Herin Co.*, 137 *Ga.* 25 (72 S. E. 415, 35 L. R. A. (N. S.) 13), it was said: "Courts should deal with practical problems in a practical way, and give the same sense to a plain and ordinary business transaction which is uniformly attached to it by the business world." Continuing, the court said: "Our code declares that judicial notice will be taken of the general customs of merchants and similar matters of public knowledge. Civil Code (1910), § 5734. . . We dare say that no depositor who paid a note or draft payable at his own bank ever went through the senseless ceremony of first taking out his money at one window and immediately paying it in at another window. He pays the note or demand which his bank holds against him with his check; and if he has the money to his credit, and the bank is a going concern, with money on hand sufficient to cash the check, the payment is equivalent, in law and in fact, to a payment in money." When a merchant or a forwarding bank sends to a collecting bank a draft on a customer, the sender understands that the collecting bank will follow the usual custom of the banking business, and impliedly assents to the same. Young v. Teutonia Bank, 134 La. 897 (64 So. 806).

Under the facts of this case we think it is clear, from the standpoint of reason and justice and by the weight of authority that when the collecting bank sent its check by the usual course of business, no trust existed, but, on the contrary, that the relation was simply that of debtor and creditor. Some courts have drawn a distinction between cases where the collections have been made without any specific instructions, but only under the implied instructions to collect and remit in the usual course of business, and those where there have been specific instructions to "collect and remit." The argument in favor of holding the transaction to be a trust would be stronger where there were specific instructions. In this case, however, it is not contended that there were any specific instructions. The question in this State, however, has been

completely foreclosed. *Citizens National Bank* v. *Haynes,* 144 *Ga.* 490 (87 S. E. 399); *Ober & Sons Co.* v. *Cochran,* 118 *Ga.* 396, 404 (45 S. E. 382, 98 Am. St. R. 118). In the case last cited the court quoted from Sayles *v.* Cox, 95 Tenn. 579 (32 S. W. 626, 32 L. R. A. 715, 49 Am. St. R. 940), with approval, "The general rule, where the bank has completed the collection and mixed the fund with its own, is that the bank is no longer a trustee, but simply a debtor, and that the owner of the paper can not claim a preference out of its assets." This is followed by an elaborate discussion and the citation of many authorities. It is true that the efforts in these cases were to impress with a trust funds collected by a receiver. But the ruling that the relation was simply that of debtor and creditor would be fatal whether the claim for a preference applied to funds realized by the receiver, or to funds already in possession of the insolvent bank when the receiver took charge.

Having ruled that the intervenor was not entitled to a preference over the general creditors, it is unnecessary either to state or to discuss the contentions of the plaintiff in error in regard to identification of the funds. The assignments of error in regard to the admission of evidence, not being mentioned in the brief of counsel for the plaintiff in error, are considered as abandoned.

*Judgment affirmed. All the Justices concur.*